IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LINDA L. PITTMAN,                          )
                                           )
                    Plaintiff              )          Civil No. 05-652-TC
                                           )
          v.                               )          OPINION AND
                                           )          ORDER
JO ANNE B. BARNHART,                       )
Commissioner of Social Security,           )
                                           )
                    Defendant              )


ALAN STUART GRAF
P.O. Box 98
Summertown, TN 38483

          Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

DAVID J. BURDETT
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

          Attorneys for Defendant

COFFIN, Magistrate Judge:

Plaintiff Linda Pittman seeks judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383).

## BACKGROUND

Born in 1952, Pittman completed high school and in 1981 completed an associate's degree in landscape maintenance. Tr. 84, 97.[1]  Between 1984 and 1998 Pittman primarily worked as a head gardener and landscape maintenance person, though she also worked intermittently as an office support person, hardware salesperson and florist assistant.  Tr. 104.

Pittman states she was first bothered by hip pain, lumbar pain, fibromyalgia, and urinary and fecal incontinence between May and September 1994.  Tr. 91.  Pittman filed applications for DIB and SSI on April 15, 2002, relying upon September 24, 2001 as her onset date.  Tr. 16, 84, 535.  These applications were denied by the ALJ and the Commissioner's decision became final on October 25, 2004.  Tr. 13-14.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential  process encompassing between one and five steps in determining disability under the meaning of the Act.  20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 107 S. Ct. 2287, 2291 (1987).  Pittman challenges the ALJ's

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer filed September 13, 2005 (Docket # 12).

evaluation of the evidence and his conclusions at steps four and five.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity (RFC). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 416.1545(a), 416.920(e), 416.945(a); Social Security Ruling (SSR) 96-8p. The ALJ uses this information to determine if the claimant can perform past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant cannot perform past relevant work, the ALJ must determine if the claimant can perform other work in the national economy at step five. *Yuckert*, 107 S. Ct. at 2291; *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098.  If the process reaches the fifth step the burden shifts to the Commissioner to show that jobs exist in the national economy in the claimant's residual functional capacity.  *Yuckert*, 107 S. Ct. at 2291; *Tackett*, 180 F.3d at 1098.  If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§  404.1566, 404.1520(f), 416.920(f).

## THE ALJ'S FINDINGS

The ALJ found Pittman "not fully credible"  regarding her allegations of disabling pain and inability to work  Tr. 25.   The ALJ found evidence supporting degenerative lumbar disc disease, fibromyalgia, urge urinary incontinence, a major depressive disorder and a history of substance addiction disorder.  Tr. 17.  The ALJ assessed Pittman's  RFC:

3 - OPINION AND ORDER

> The claimant retains the exertional residual functional capacity to push, pull, lift and/or carry up to 10 pounds frequently and up to 20 pounds occasionally. She can stand and/or walk for about six hours of an eight hour workday. She can sit for about six hours of an eight hour workday. She can frequently balance and kneel. She can occasionally stoop, crouch, crawl and climb ramps, stairs, ladders, ropes or scaffolds. She should avoid concentrated exposure to hazards including machinery and unprotected heights.

Tr. 28.

At step four, the ALJ found that Pittman's RFC did not preclude returning to her previous work as a florist assistant, office services assistant or hardware salesperson. Tr. 28. Accordingly, the ALJ determined that Pittman was not disabled under the Act at any time through the date of his decision. Tr. 28.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh "both the evidence that supports and detracts from the Commissioner's conclusion." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) *citing Martinz v. Heckler*, 807 F.2d. 771, 772 (9th Cir. 1986). The reviewing court "may not substitute its judgement for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Magallanes*, 881 F.2d at 750; *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

4 - OPINION AND ORDER

Pittman contends the ALJ failed to reach an accurate RFC assessment because he improperly assessed her credibility, improperly rejected her testimony, improperly addressed medical evidence and solicited inaccurate vocational testimony in relying upon the disputed RFC assessment.

**1. Pittman's Credibility**

The ALJ based his credibility finding primarily upon Pittman's medical treatment record and allegedly inconsistent statements she made to physicians regarding her pain. He also noted allegedly inconsistent pain behavior in Pittman's daily activities. Tr. 18, 23. Pittman's credibility in turn influences interpretation of her medical record, discussed below.

The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In construing his credibility findings, the ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Additionally, the ALJ may employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id*.

The ALJ noted that Pittman ceased taking medication prescribed to treat her pain and urinary incontinence. Tr. 23, 24. Medical notes show that Pittman ceased taking narcotic medication due to associated stomach pain and gastrointestinal side effects. Tr. 214, 257, 270, 283 - 285. Pittman was later concerned her incontinence medication caused increased thirst,

5 - OPINION AND ORDER

exacerbating the condition.  She also reported that the treatment ceased working effectively.  Tr. 489, 497.  If the ALJ cites non-compliance with treatment in a credibility determination, he must consider reasons for discontinuing treatment.  *See Smolen*, 80 F.3d at 1284.  When a claimant gives good reason for not taking medication for her symptoms, her symptom testimony cannot be rejected for not doing so.  *Id.*  Finally,  in March of 2003, Pittman's Oregon Health Plan insurance ceased.  Tr. 489, 492, 522.  Inadequate insurance coverage or restricted finances is not an adequate reason to fault claimant for failing to follow prescribed treatment regimes.  *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995).

The ALJ also noted inconsistencies in Pittman's statements regarding her impaired concentration, back pain, and daily activities.  Tr. 22.  Inconsistent statements regarding symptoms by a claimant are an acceptable reason to question credibility.  *Smolen*, 80 F.3d at 1284.  Here, the ALJ suggested that ability to watch and discuss television discredited any concentration difficulty stemming from Pittman's learning disability.  Tr. 23.  However, psychological reports do not suggest Pittman's learning disability precludes discussing television.

The ALJ also cited Pittman's activities of daily living in finding Pittman not fully credible.  Tr. 22.  Daily activities inconsistent with alleged disability may support a negative credibility finding, but sporadic completion of daily living activities, such as carrying a five pound bag of groceries, completing personal hygiene, or attending AA meetings, are not equivalent to full time employment.  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant "need not vegetate in a dark room," to be found disabled.  *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).

6 - OPINION AND ORDER

The ALJ emphasizes that Pittman made inconsistent statements to her physicians regarding her experienced pain. Tr. 23, 24. Pittman appears confused and distraught throughout the record, and treating physicians repeatedly observed that she has difficulty articulating herself and her perceptions of pain. Tr. 207, 267, 467, 493, 497, 501. She also has difficulty understanding medical instructions and diagnoses. Tr. 281, 497, 501. Evaluating clinicians noted that Pittman looks and acts twenty years younger than her stated age, bringing plush toys to appointments and wearing clothing embellished with Disney characters. Tr. 200 - 201, 371. These observations corroborate cited observations that Pittman's articulation is limited. Though artless, Pittman's presentation regarding her pain, incontinence and learning disorder is generally consistent throughout the record.

Finally, the ALJ suggests that because Pittman did not leave her hearing to use the restroom, her incontinence must be inconsequent. Tr. 25. While personal observations suggesting the claimant's behavior does not correspond to medical evidence are permissible, the court frowns upon "sit and squirm tests." *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999); *Perminter v. Heckler*, 765 F.2d 870, 872 (9th Cir. 1985).

The medical record consistently documents and corroborates Pittman's symptom testimony. This evidence includes imaging studies, numerous physician reports throughout the period in question and an extensive pain management protocol. Tr. 194 - 195, 202, 206, 217, 224, 226, 308, 457 - 458, 474, 476. The ALJ erred in suggesting that Pittman's credibility and testimony was not supported by the medical record. Once a claimant has shown an underlying impairment, the ALJ may not reject symptom testimony without specific findings showing clear

and convincing reasons for doing so. *Smolen*, 80 F.3d at 1282, *affirming Cotton v. Bowen*, 799 F.2d 1403 (9th Cir. 1986).

For these reasons, the ALJ failed to articulate substantiated clear and convincing reasons for his credibility determination. His findings are not sufficient for this court to conclude that he did not arbitrarily reject Pitman's testimony. *Doddrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993), *see also Orteza*, 50 F.3d at 750. Accordingly, his credibility determination is not sustained.

## 2. Medical Source Statements

### a. Physical Impairments

Pittman's medically documented physical impairments include fibromyalgia, lumbar degenerative disc disease, radicular-like lower extremity numbness, and urinary and fecal incontinence. Tr. 195, 244 - 245, 474, 476, 489. The ALJ cited these impairments in his discussion, but did not specifically consider the effects of Pittman's pain and incontinence in Pittman's RFC calculation, instead focusing upon Pittman's mechanical back impairment. Tr. 19, 25.

In 1994 Pittman injured her back in an accident while working as a gardener. Tr. 188, 199. Clinical evaluation and imaging found a bulging lumbar disc and degenerative arthritic changes of the lumbar spine. Tr. 205, 217. In 1997 Pittman quit her job at a hardware store due to increased back pain, and in March 2001 her symptoms included radicular-like numbness in her hips and legs. Tr. 195, 289. Pittman's pain again worsened in September 2002, and a discography was performed, eliciting reproducible pain. Tr. Tr. 195, 202, 217, 457 - 458.

Pittman's treating and specialist physicians credited her reports of low back and hip pain

stemming from this incident throughout the period in question. Tr. 205, 220, 248, 294 - 296,

309. Imaging and nerve conduction studies corroborated these reports. Tr. 206, 224, 227, 308.

In early 2003 Pittman showed post-surgical improvement, but her pain returned one year later in

early 2004. Tr. 459, 495, 502.

Pittman additionally has an established history of fibromyalgia. Tr. 235, 430, 467, 497.

Her treating physician made an initial diagnosis in 1999, which was confirmed by a

rheumatologist in June 2000. Tr. 244 - 245, 305, 430. Treatment included a variety of pain

medications, pain management consultations, and stretching exercises. Tr. 210 - 214, 246, 479-

81, 504-515. Treating physicians noted that Pittman's insight into her condition was poor, and

that she had difficulty understanding that immediate pain relief was unlikely. Tr. 260, 267, 280,

284. Her fibromyalgia pain is documented throughout the period in question. Tr. 235, 430, 497,

502.

Pittman's reports of pain stemming from her lumbar disease and fibromyalgia are

consistent, though inarticulate. If a claimant is found credible, an ALJ may not arbitrarily

discredit pain testimony supported by substantial evidence. *Smolen*, 80 F.3d at 1282;

*Magallanes*, 881 F.2d at 750.

Pittman's incontinence is repeatedly documented throughout the record between 1994 and

2004. Tr. 193, 209, 221, 445, 492, 499-503, 517, 522. These references include clinical

observations and signs. Tr. 209. Specialist treatment encompassed physical therapy and

medication. Tr. 489 - 90. Clinical examination records from Pittman's treating physician

9 - OPINION AND ORDER

confirm her reported increased incontinence. Tr. 209, 460. In March 2004, Pittman additionally

reported fecal incontinence, which her physicians credited. Tr. 499, 517. In May 2004, Pittman

reported eight to ten episodes of urinary incontinence per day, and additional episodes while

sleeping. Tr. 499. Her treating physician assessed this dysfunction as "quite severe," in May

2004, shortly before the record closes. Tr. 523.

**b. Mental Impairments**

The ALJ found Pittman's depression and learning disorder "no more than mild

limitations" and found they did not significantly impact her ability to return to her past relevant

work at step four. Tr. 22. He noted that there is no evidence these symptoms caused Pittman to

miss work in the past and emphasized that Pittman completed high school and an associate's

degree in landscape maintenance. Tr. 22, 27. These are not sufficiently specific reasons for

disregarding opinions of treating and evaluating physicians. *Fair v. Bowen*, 885 F.2d 597, 604-5

(9ᵗʰ Cir. 1989).

Pittman's depression is consistently documented by treating physicians, emergency room

physicians, an evaluating psychiatrist and a nurse practitioner therapist. Tr. 215, 298, 353, 345,

367. Pittman's treating physicians documented her depression between 1999 and July 2004.

Their observations included tearfulness, agitation, hopelessness, difficulty concentrating, and

other clinical signs. Tr. 251, 255, 260, 267, 280, 289, 305, 443, 460, 532 - 533. Contrary to

statements by an evaluating psychologist, Pittman was twice admitted to emergency rooms for

attempted suicide and suicidal ideation in June and December 2002. Tr. 311, 369, 372, 374,

404. Both visits documented acute and severe depressive symptoms. *Id.* In April, 2002,

Pittman's treating physician felt that her depressive symptoms were "severe." Tr. 260.

After her December 2002 hospitalization, Pittman was discharged to the Ryles Center residential care facility in early 2003. Tr. 375, 309-348. Upon admission, a psychiatrist diagnosed severe Major Depression and Post-Traumatic Stress Disorder (PTSD). Tr. 345. The ALJ failed to consider this medical opinion. The ALJ is not required to exhaustively recite each piece of evidence in the record, but he must review the record in its entirety. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003); 20 C.F.R. §§ 404.1520(a)(3); 416.920(a)(3).

While at the Ryles Center, Pittman remained in the care of Kay Peterson, a psychiatric nurse practitioner, who submitted a letter to the record indicating Pittman's diagnoses included "severe" major depression and post-traumatic stress syndrome. Tr. 353. The ALJ noted this letter, but failed to note that these findings were endorsed by an attending physician. Tr. 21, 366. The ALJ is correct in noting that a nurse practitioner is an "other" source, but a nurse practitioner functioning within a team approach to healthcare may be construed as an acceptable medical source. 20 C.F.R. 404.1514(d), 416.913(d); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996).

In July 2004, a second nurse psychiatric nurse practitioner, Carol Dodson, submitted a letter to the record affirming that Pittman's diagnoses continued. Tr. 532. Dodson's remarks are not corroborated by a physician, but suggest that Pittman's impairments did not resolve before the record closed. Here, the ALJ correctly found Dodson an "other" medical source and gave germane reasons for rejecting her testimony. 20 C.F.R. § 404.1513(d); 416.913(d), *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

In evaluating Pittman's learning disorder, the ALJ suggested a psychologist's clinical

examination and observations were insufficient, and gave greater weight to Kari Hanken, a community college educational adviser with unidentified credentials. Tr. 22. Hanken suggested that Pittman did not have a documented learning disorder, but found reduced functioning in comprehension and memory. Tr. 75. Conversely, an evaluating psychologist, Dr. Wolf, confirmed Pittman's reported learning disorder via clinical cognitive testing. Tr. 372-3. A specialist is not required for psychiatric diagnoses. *Sprague v. Bowen*, 812 F.2d 1226, 1231-2 (9th Cir. 1987).

As the ALJ noted, Hanken is considered an "other," or non-medical, source. 20 C.F.R. §§ 404.1513(d), 416.913(d). The ALJ is responsible for evaluating conflicting evidence; here he inappropriately gave greater weight to a non-medical source in evaluating Pittman's learning disorder. 20 C.F.R. §§ 404.1513, 416.913.

## 3. RFC Calculation

The ALJ's RFC encompassed Pittman's mechanical back impairment, but does not encompass the non-exertional factors stemming from Pittman's reported pain, incontinence and mental impairments. Tr. 23. An ALJ must consider pain if the claimant is found credible and produces evidence of an underlying impairment. *Smolen*, 80 F.3d at 1282. Mental impairments, if severe, must be included in an RFC calculation. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Incontinence and pain are also nonexertional impairments to be included, if severe. *Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990).

## 4. The ALJ's Findings at Step Four

The vocational expert at Pittman's hearing stated that Pittman would be significantly

12 - OPINION AND ORDER

restricted in performing jobs in the national economy if her testimony and medical evidence

regarding required restroom breaks is credited. The vocational expert stated that lost productivity

due to restroom breaks is a "grey area," but said that such absences are generally not allowed in

sedentary unskilled work. Tr. 578. Vocational evidence regarding incontinence must be

considered as a non-exertional factor in making a step four and five decision. *Gonzalez*, 914

F.2d at 1202. The ALJ erred in omitting vocational testimony regarding Pittman's documented

incontinence impairment from his step four and five findings.

## REMAND

This court has discretion to remand for further proceedings or for immediate payment of

benefits. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), cert. denied, 531 U.S. 1038

(2000). The issue turns on the utility of further proceedings. A remand for an award of benefits

is appropriate when no useful purpose would be served by further administrative proceedings or

when the record has been fully developed and the evidence is not sufficient to support the

Commissioner's decision. *Rodriguez v. Brown*, 876 F.2d 759, 763 (9th Cir. 1989).

Improperly rejected evidence should be credited and an immediate award of benefits

directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such

evidence, (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find

the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178 quoting *Smolen*,

80 F.3d at 1292. Such is the case here. The matter is remanded for an immediate award of

benefits.

13 - OPINION AND ORDER

## **CONCLUSION**

For these reasons, this court reverses the decision of the Commissioner and remands this

matter pursuant to sentence four of 42 U.S.C. § 405(g) for the immediate award of benefits.

IT IS SO ORDERED.

DATED this _19_ day of June, 2006.


Thomas M. Coffin
United States Magistrate Judge

14 - OPINION AND ORDER